# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EVERLINE CORNEY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00126 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    Introduction

Plaintiff Everline Corney brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income.  She asserts here, as she did before the Social Security Administration, that she has been under a benefits-qualifying disability – starting on June 1, 2009 – due to a panic disorder, depressive disorder, and pain in her neck and hand.  Social Security Administrative Law Judge Theodore W. Grippo denied Plaintiff's application on the main ground that she was not under a "disability" within the meaning of the Social Security Act.

Plaintiff brings the present case challenging ALJ Grippo's non-disability decision.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

She advances one main issue: "The Administrative Law Judge Erred Finding that Plaintiff's back impairment had not worsened since the previous Administrative Law Judge's decision." (Doc. #7, *PageID#* 1141).

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Doc. #6), and the record as a whole.

## II.    Background

### A.    Plaintiff's Testimony

Plaintiff was 50 years old on the date she filed her application for benefits. This placed her in the Social Security Administration's category of a person "closely approaching advanced age." Her education is considered "limited" under the Regulations, and she does not have any past-relevant-work experience. (*PageID#* 59).

During Plaintiff's administrative hearing in April 2012, she noted that she had not worked since approximately 1995 or 1996. (*PageID#* 70). She testified that she cannot perform any job due to problems with her fingers, ankles, and elbow. She described pain in her fingers as "like around the knuckle area, and the top where all of the lines are at like, you know, the whole finger. The whole fingers, all of the fingers." (*PageID#* 73). She feels pain in her wrists when she tries to bend them.

Plaintiff's ankles will swell "just from walking." (*PageID#* 73). During the hearing, she elevated her left ankle because it had been swollen since the day before. She

2

did not know what caused the swelling but stated, "I have inflammation throughout the body, and I was diagnosed with fibromyalgia." (*PageID* # 73).  Her left foot cramps when she walks.  And she has elbow pain that is "sharp" and "shooting." (*PageID* # 74).  She has been prescribed medication and told to do "little exercises." (*PageID* # 75).

Plaintiff received mental-health treatment since 2004.  She saw a therapist once a month and a psychiatrist every 3 months.  She began this treatment due to anxiety, which caused her to have shortness of breath, dizziness, and blurry vision.  Her anxiety occurred all the time when she did not take her medication.  When she took her medication, she felt "kind of normal" but she further indicated that the feeling "wears off," and she needs to again take her medication.  (*PageID* # 76).  At the time of the ALJ's hearing, she took Xanax 3 times a day and Tofranil once or twice a day, depending on how she felt.  This medication did not cause her any negative side effects.  To treat her pain, she took Percocet, which made her feel a little drowsy.

As to her physical abilities, Plaintiff indicated that she was unable to carry a bag of sugar.  If she tried to carry a bag of sugar to her home on the second floor, her fingers would "cramp and cling up." (*PageID* # 78).  She therefore estimated that she could lift a little less than 5 pounds.  She testified that she could stand in place, with something to lean on, for 10 minutes.  If she stood too long her feet would swell.  She could walk to a nearby store that is a little less than a block away, but she described this as "hard" and noted that she always had someone go with her.  She estimated she can sit for about 10 to 15 minutes

3

at a time before needing to stand.  She was unable to button pants but could tie a loose knot on her shoes.  She was unable to wash her hair and wears a wig.  She had a significant amount of trouble trying to open jars and plastic bottles.  Typically her son opened them for her.  She was only able to write a few lines before her handwriting "starts looking really sloppy and letters are going up and down and it doesn't look the same." (*PageID*# 81).

Plaintiff attempted to sweep around the house but often her hands would cramp and she would drop the broom.  Her son did the dishes and helped her use the oven.  She tried to go to bed early because she was often awakened by pain.  She testified that she cried a lot because she did not understand what had happened to her body and her rheumatologist did not tell "too much."  (*PageID*# 83).

### B.    <u>Medical Evidence</u>

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because the ALJ, Plaintiff, and the Commissioner have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.

## III.  <u>The "Disability" Requirement and Judicial Review</u>

The Social Security Administration provides Supplemental Security Income to

indigent individuals, subject to several eligibility requirements.  Chief among these requires an applicant to be a "disabled individual."  42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2]  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

5

387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . "  *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.   **Two ALJ Decisions**

To determine if an applicant for Supplemental Security Income is under a benefits-qualifying disability, the Social Security Administration employs its 5-step sequential evaluation.  *See* 20 C.F.R. §416.920(a)(4); *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  When denying Plaintiff's two applications for benefits, two different Administrative Law Judges conducted the Social Security Administration's 5-step sequential evaluation.  Each ALJ concluded that Plaintiff was not under a benefits-qualifying disability.

6

Plaintiff filed an application for benefits in 2004.  Administrative Law Judge

Steven H. Templin denied that application.  (*PageID*# 110-17).  For present purposes, his

central findings involved Plaintiff's residual functional capacity[3] and her age.  ALJ

Templin found that Plaintiff could perform a limited range of sedentary unskilled work

despite her impairments.  She was considered a "younger" person at the time because she

was under age 50.  Given these central findings, the ALJ concluded that Plaintiff could

perform a significant number of jobs available to her in the national economy.  She was,

therefore, not under a disability and not eligible for benefits.  (*PageID*# 116-17).

After ALJ Templin's decision, the world continued to turn and Plaintiff grew older.

By the date of her most recent benefits application, she had turned age 50, thus becoming a

person "closely approaching advanced age" for social security purposes.  (*PageID*# 59).

This, it turns out, potentially favored Plaintiff in light of ALJ Templin's previous

conclusion that she could perform only a limited range of sedentary work.  The

Administration's Listing of Impairments – the "Grids" – considers a person disabled if she

is closely approaching advanced age and is limited to sedentary work (and has a limited

education and performed unskilled or no past work).  *See* Medical-Vocational Guidelines,

20 C.F.R. Part 404, Subpart P, Appendix 2, §201.09.  But, if a person closely approaching

advanced age can perform light work (and has a limited education and performed unskilled

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

or no past work), the Grids direct a finding of "not disabled."  *See* 20 C.F.R. Part 404,

Subpart P, Appendix 2, §202.10.

ALJ Grippo's decision tracked the latter course.  He concluded that she could

perform a minimally limited range of light work.  Specifically, he found:

> [Plaintiff] has the residual functional capacity to perform light work
> ..., meaning that [she] is capable of lifting or carrying 20 pounds
> occasionally, lifting or carrying 10 pounds frequently, sitting for 6 hours in
> an 8-hour workday, and standing or walking 6 hours in an 8-hour workday.
> [She] is capable of simple tasks with predictable outcomes and incidental
> social contact.

(*PageID*# 52).  ALJ Grippo thus turned – not to Rule 201.09 but – to Rule 202.10 and to

recognize under the latter that Plaintiff was not under a disability.[4]  *See PageID*# 59.  In

doing so, ALJ Grippo relied on Grid Rule 202.10 rather than using it as a framework for

decision making and without considering evidence of the number of available jobs that

Plaintiff could perform.  *See id*.  For further insight into Sixth Circuit caselaw concerning

how the Grids operate, *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424-25 (6th Cir.

2008).

This led ALJ Grippo to ultimately conclude that Plaintiff was not under a benefits-

qualifying disability.

---

[4] This Grid Rule applied because ALJ Grippo also found that Plaintiff could perform the full
range of exertional light work and that her non-exertional limitations had little or no effect on the number
of jobs (the "occupational base") available to those who can perform unskilled light work.  *See PageID*#
59; *see also*

8

V.     <u>**Discussion**</u>

Given the potential significance of ALJ Grippo's light-work finding, accompanied by his rejection of ALJ Templin's sedentary-work finding, res judicata looms large in the present case.  Plaintiff contends that res judicata and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) required ALJ Grippo to find – as ALJ Templin had – that she could perform a limited range of sedentary work.

The Commissioner maintains that ALJ Grippo did not err in determining that new and material evidence supported the conclusion that Plaintiff's condition had improved after ALJ Templin's decision.

"Courts have traditionally applied the concept of res judicata to decisions by administrative agencies when a final judgment has been reached."  *Drummond*, 126 F.3d at 840.  In social security proceedings, "[j]ust as a ... claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner."  *Id*. at 842. *Drummond*, itself, is an instructive example.

Drummond applied for benefits due to leg and back pain.  The Social Security Administration, through an Administrative Law Judge, denied her application in part because she could still perform sedentary work and because she was, at age 49, a "younger" person.  *Id*. at 838.  Drummond later filed another application for benefits (two actually) again finding no success.  An Administrative Law Judge denied her later application, finding she could perform medium work and, consequently, could perform her

past relevant work.  *Id*. at 838-39.  Under the Regulations, the ALJ's medium-work finding was critical because it resulted in the conclusion that Drummond could perform her past work and, consequently, was not disabled.  *Id*. at 839.  In contrast, if Drummond had been able to perform only sedentary work, her increased age – she had since turned age 50 – combined with her sedentary work ability would have mandated the conclusion that she was disabled and entitled to benefits.  *Id*.  This sounds familiar to Plaintiff in the present case.  But first, a bit more about *Drummond* and res judicata.

In *Drummond*, the Sixth Circuit Court of Appeals applied res judicata to hold: "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Id*. at 842.  The Commissioner bears the burden "to prove changed circumstances and therefore escape the principles of res judicata."  *Id*. at 843.  An Acquiescence Ruling mandates ALJs in Ohio to follow *Drummond* by applying res judicata to an earlier assessment of a claimant's residual functional capacity and other earlier findings.  The Acquiescence Ruling explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98-4(6), 1998 WL 283902 (June 1, 1998).

Returning to the present case, ALJ Grippo declined to apply res judicata under

*Drummond* as follows:

> The current record contains new and material evidence that shows an improvement in the claimant's physical functioning, including a medical source statement from the claimant's primary care physician, (Ex. 9F; See 30F/31F), which are discussed in greater detail below.  The current record does not contain any objective diagnostics or clinical findings that support a sedentary residual functional capacity in this case.  In contrast, the record contains significant longitudinal mental health treatment history that likely warrants mental health restrictions in addition to mere "unskilled work," as previously assessed.  In both instances, the record contains "new and material" evidence that precludes the applicability of *Drummond*.

(Doc. #6, *PageID*# 54).

ALJ Grippo relied on the October 2008 MRI and noted that ALJ Templin did not mention the results of this MRI in his decision.  (*PageID*# 319).  This MRI, however, is not substantial evidence supporting the ALJ's conclusions for four reasons.  First, it predates ALJ Templin's January 2009 decision and therefore its results are not probative of whether Plaintiff's condition improved, or not, after January 2009.  Second, the fact that ALJ Templin's decision is silent about this MRI overlooks that ALJ Templin considered the "entire record" in making his findings.  (*PageID* #112).  Accepting ALJ Templin's statement at face value means that he considered the October 2008 MRI when reaching his decision.  Third, ALJ Templin found that Plaintiff was limited to sedentary work based on the opinions of a "medical expert in general surgery...." (*PageID*# 114).  Given the expertise held by both medical experts and ALJs in disability determinations, it is safe to assume that ALJ Templin would not have relied on this medical expert's opinions if the expert had relied on an incomplete medical record.  *See* 20 C.F.R. §§416.927(d)(1),

11

416.946(c) (ALJs are responsible for determining whether an applicant meets the statutory definition of disabled; assessing residual functional capacity is ALJ's duty); *see also* Soc. Sec. Rul. 96-6p, 1996 WL374180 at *2 (July 2, 1996) (state agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."). Lastly, ALJ Templin found that Plaintiff had mild arthritic changes in her lumbar spine. (*PageID*# 112). This finding is consistent with the October 2008 MRI, which demonstrated mild diffuse bulging disc at L4-5 and a mild broad based central disc bulge at L5-S1 with bilateral mild to moderate hypertrophy of the facet joints and mild lateral and foraminal stenosis. (*PageID*# 319). For all these reasons, it was unreasonable for ALJ Grippo to believe that ALJ Templin failed to consider this MRI when finding Plaintiff's residual functional capacity at the sedentary level.

The ALJ also relied on cervical x-rays taken in April 2009, which he states "revealed no degenerative changes with clear neural foramina." (*PageID*# 54). The ALJ, however, is too selective here. He overlooked that these same x-rays showed straightening of Plaintiff's normal curve and "[p]rominent soft tissue in the paravertebral area anterorior to C1 and C2" suggestive of a retropharyngeal inflammatory. (*PageID*# at 308). This x-ray does not constitute substantial evidence supporting the ALJ's finding of new and material evidence of improvement in Plaintiff's condition. This conclusion is further supported by an October 2011 lumbar x-ray showing "[m]ild degenerative disk disease and

fact arthropathy at L5-S1 level" (*PageID#* 911); a thoracic x-ray revealing "mild multilevel anterior spondylosis" (*PageID#* 912); and a cervical x-ray showing "[m]ild degenerative disc disease at the C5-6 level." (PageID 913). Such objective findings tend to support a worsening of Plaintiff's spinal condition in several areas, rather than supporting ALJ Grippo's finding that her condition had improved.

Next, the ALJ erred in relying on 2009 EMGs to find that she did not have carpal tunnel syndrome. (*PageID#* 54). However, he correctly recognized that this EMG "showed evidence of early borderline median neuropathy." *Id*. The ALJ overlooked that "early borderline median neuropathy" tends to be an additional impairment over those previously identified by ALJ Templin. Even if this was not a severe impairment, it certainly was not evidence that reasonably supported the ALJ's finding of an improvement in Plaintiff's condition.

Additionally, a September 2009 x-ray suggested "very minimal hypertrophic degenerative changes to the proximal interphalangeal joint of the 5th digit." (*PageID#* 862). An x-ray of her left elbow and hand showed "[m]inimal negative ulnar variance noted … which can on occasion be associated with isolated osteonecrosis of the lunate carpal bone." (PageID 860). Although these objective-test results may not indicate a serious physical deterioration in Plaintiff's condition, they do nonetheless show some worsening in Plaintiff's physical condition after ALJ Templin's decision in January 2009.

Plaintiff was treated with skilled home health care from February 25, 2011 through

March 16, 2011.  (*PageID#* 785-827).  On her first exam, she had decreased sensation, numbness, and tingling in her hands and feet; bilateral leg weakness; and a slight listing when she walked.  (*PageID#* 809).  On March 2, 2011, she had decreased range of motion of her left wrist, trembling in hands, difficulty buttoning, numbness in her hands and fingers.  (*PageID#* 795).  She was given new wrist splints on March 11, 2011.  (*PageID#* 793).  During the sessions, she was observed to have an abnormal or ataxic gait.  (*PageID#* 788-91, 806).  She was given training with the use of a cane for walking.  (PageID# 790-91).  The ALJ made no mention for her need to walk with a cane in his decision, even though this supports the finding that her condition had worsened, and not improved, since ALJ Templin's decision.

On other exams, she had decreased strength, tenderness of her left shoulder, decreased range of motion of her shoulder, decreased range of motion of her wrists and hands, edema in her hands, decreased strength in her wrists, and tenderness of her hands and lumbar spine.  (*PageID#* 893, 895, 898-902, 910, 938, 941, 943, 946, 948-950).  On January 24, 2012, a physical-therapy exam revealed she stood with her head forward and with rounded shoulders, and she had decreased range of motion in her thoracic spine, upper cervical lordosis, elevated left ileac crest when standing, decreased strength in her cervical spine, arms, and wrists; decreased grip on the left, pain on palpation of her cervical and thoracic spine, paraspinal muscles, bilateral clavicles, and scapular muscles.  (*PageID#* 960).  Again, these clinical findings do not support the ALJ's determination that

14

Plaintiff's condition had improved.  In January 2012, Dr. Schriber, a rheumatiologist, diagnosed Plaintiff polyarthralgia of uncertain cause and suspected fibromyalgia. (*PageID#* 955).

The Commissioner contends, "Because ALJ Templin concluded in January 2009 that Plaintiff was not disabled, Plaintiff must demonstrate that her condition has improved or worsened, or else collateral estoppel applies to all of the ALJ's determinations that led to a finding of non-disability."  (Doc. #9, *PageID#* 1029).  In support of this, the Commissioner relies on *Drummond* and *Fuson v. Comm'r of Soc. Sec*., 2000 WL 1140744 (6th Cir., Aug. 8, 2000).  *Drummond* first.

*Drummond* does not support the Commissioner's argument.  It instead places the burden on the Commissioner "to prove changed circumstances and therefore escape the principles of res judicata."  126 F.3d at 843.  *Drummond*, moreover, is analogous to the present case because, like the present case, it applied res judicata to an earlier ALJ's assessment of the plaintiff's residual functional capacity at the sedentary level rather than permitting the ALJ to find the plaintiff could perform medium level work.  Contrary to the Commissioner's contention, nothing in *Drummond* indicates that the burden to show changed circumstances falls to a plaintiff who was previously denied benefits.

In *Fuson*, the plaintiff (Fuson) was granted benefits.  His benefits ended years later, in 1992, when an ALJ concluded that his medical condition had improved to the point he could work.  Upon judicial review, the district court affirmed the termination of benefits.

15

2000 WL 1140744 at *1.  Nearly two years later, Fuson filed a new application for benefits.  An ALJ denied his application, the district court affirmed, and Fuson appealed to the Sixth Circuit Court of Appeals.  The Sixth Circuit found that res judicata operated against Fuson to the extent the issue of whether his benefits should continue had been previously resolved in 1992.  The Sixth Circuit then explained, "[i]n order to be awarded benefits for his condition since that time, Fuson must demonstrate that his condition had so worsened in comparison to his condition in ... 1992 that he is unable to perform substantial gainful activity."  *Id*.  In the end, the Sixth Circuit concluded that substantial evidence supported the ALJ's non-disability decision.  *Id*. at *2.

*Fuson* is easily distinguished from the present case because of its procedural posture.  Unlike the present case, the burden fell to Fuson because the Commissioner had previously met his burden to show that Fuson's condition had improved and that he was, therefore, no longer entitled to benefits.  *Id*. at *1-2.  With the issue of Fuson's improved condition fully litigated and established with finality in 1992, his later application for benefits was not about whether his medical condition had improved but was about whether he established anew that he was under a benefits-qualifying disability.  In other words, when Fuson applied for benefits in 1994, he carried the burden to show he was under a disability.  And, it thus fell to him to show that his medical condition had deteriorated after 1992 to the point he could not work.

The feature distinguishing the present case with *Fuson* is that the parties here have

16

not litigated to finality the issue of whether Plaintiff's condition has improved to the point she can perform more than sedentary work or light work.  That was a central issue in the administrative case facing ALJ Grippo and remains an issue the parties still debate in the present case.  Given this lack of finality, the Commissioner retained the burden to convince the ALJ that Plaintiff's medical condition had improved to the point she could do more than sedentary work or light work.  *See Drummond*, 126 F.3d at 843.  With *Fuson* thus distinguished, the Commissioner is incorrect to assert that "Plaintiff must demonstrate that her condition has improved or worsened ..."  *See id*.

Turning to ALJ Grippo's assessment of the medical source opinions of record, his decision omits consideration of Dr. Halley's opinions concerning Plaintiff's mental health difficulties.  In May 2011, Dr. Halley and Ms. Fussichen opined that Plaintiff had many moderate restrictions in her mental work abilities such as difficulty in maintaining social functioning and difficulties in concentration, persistence, or pace.  (*PageID* # 865).  Dr. Halley and Ms. Fussichen also opined that Plaintiff had moderate impairments in her ability to maintain and extend concentration for extended periods, to sustain an ordinary routine without special supervision, and to make simple work-related decisions.  *Id*.  They estimated that on average, Plaintiff's mental impairments would cause her to be absent from work more than three times per month.  *Id*.  It was error for the ALJ to not address Dr. Halley's opinions.  *See Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 747-48 (6th Cir. 2007).  This is particularly so where the ALJ found at Step 2 that Plaintiff had the severe

mental impairments of anxiety disorder and affective disorder but at Step 4 found that she was very minimally limited in her mental work abilities.  Specifically, he found that Plaintiff was "capable of simple tasks with predictable outcomes and incidental social contact."  (*PageID*# 52, 59).  This finding, moreover, appears inconsistent with ALJ Grippo's recognition that – in his words – "the record contains a significant longitudinal mental health treatment history that likely warrants mental health restrictions in addition to mere unskilled work."  *Id*. at 54.

Additionally, at Step 5 ALJ Grippo relied on the Grid Rule 202.10 to find Plaintiff not disabled.  His analysis was two-fold: first, he determined that Plaintiff met all the criteria of this Rule (light work, age, education, unskilled or no work); second, he applied the Rule because he found that Plaintiff's nonexertional impairments did not reduce the occupational base of jobs upon which the Grids are based.  *Id*. at 59.  The Grids applied in this situation, as long as ALJ Grippo's two-fold analysis is supported by substantial evidence.  The concern here is that ALJ Grippo erred by overlooking or ignoring Dr. Halley's opinions about Plaintiff's mental work limitations even though ALJ Grippo also characterized her longitudinal mental-health-treatment history as significant and recognized that her significant-treatment history warranted restrictions beyond mere unskilled work.  *Id*. at 54.  The consistency between this and Dr. Halley's opinions might well have warranted further mental-work restrictions such that the occupational base was reduced and the ALJ's strict adherence to Grid Rule 202.10 was no longer valid.  *See*

18

*Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) (The Social Security

Administration "may not rely on the grids alone to meet its step-five burden where the

evidence shows that a claimant has nonexertional impairments that preclude the

performance of a full range of work at a given level."); *see also* Soc. Sec. Rul. 83-14, 1983

WL 31254 ("No table [Grid] rule applies to direct a conclusion of 'Disabled' or 'Not

Disabled' where an individual has a nonexertional limitation or restriction imposed by a

medically determinable impairment.").

     A further concern arises over whether ALJ Grippo needed the substantial evidence

a vocational-expert testimony might have added to the record about the effect Plaintiff's

mental-work limitations and other nonexertional limitations on the occupational base.  ALJ

Grippo cites no evidence in support of his conclusion that the occupational base was not

effected by Plaintiff's nonexertional limitations.  Without such testimony or reliance on

other evidence, ALJ Grippo's finding of no reduction in the occupational base was based

on his own intuition or was not, at a minimum, based on substantial evidence.  ALJ Grippo

did not make any alternative finding at Step 5, as is the more usual course regarding

whether a significant number of jobs existed in the national economy that Plaintiff could

perform.

     Accordingly, for the above reasons, the ALJ's decision may not be affirmed.

## VI.   **Remand For Benefits**

     Remand is warranted when an ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky* v. Bowen, 35 F.3d 1027, 1041 (6th Cir. 1994).

A remand for an award of benefits is warranted in the present case because res judicata applies to ALJ Templin's previous conclusion that Plaintiff could perform a limited range of sedentary work, and because the Commissioner has yet to meet her burden "to prove changed circumstances and therefore escape the principles of res judicata." *Drummond*, 126 F.3d at 843. This, in turn, means that Plaintiff was under a "disability" pursuant to Grid Rule 201.09 on the date she applied for Supplemental Security Income due to her sedentary residual functional capacity; her age – 50 years old – and her resulting status as a person closely approaching advanced age; her limited education; and her history of unskilled or no previous work.

### IT IS THEREFORE RECOMMENDED THAT:

1.   The Commissioner's non-disability decision dated September 28, 2012 be **VACATED**;

2.   Plaintiff Everline Corney's application for Supplemental Security Income

20

filed on August 20, 2009 be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. §405(g) for payment of benefits consistent with a Decision adopting this Report and Recommendations and the Social Security Act; and

3.      The case be terminated on the Court's docket.


May 13, 2015


      s/Sharon L. Ovington      
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

22